CRUM & FORSTER INSURANCE COMPANY, Plaintiff,

v.

GOODMARK INDUSTRIES, INC. and Nat Schlesinger, Defendants/Third-Party Plaintiffs,

v.

Horizon International Group Ltd., Cambridge Horizon Consultants, Inc., John Morrongiello, and Norman Benet, Third–Party Defendants.

05–cv–3633 (ADS)(ETB).

United States District Court, E.D. New York.

May 22, 2007.

Cozen and O'Connor, P.C. by Elaine M. Rinaldi, Esq., John Brian Galligan, Esq., Michael James Sommi, Esq., Robert W. Phelan, Esq., Philadelphia, PA, for Plaintiff.

Jeremy L. Gutman, Esq., New York City, for Defendants/Third–Party Plaintiffs.

Shearman & Sterling LLP by Daniel M. Segal, Esq., Steven F. Molo, Esq., New York City, for Third–Party Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On August 2, 2005, Crum & Forster Insurance Company (the "Plaintiff" or "Crum & Forster") filed a complaint against Goodmark Industries, Inc. ("Goodmark") and Nat Schlesinger ("Schlesinger") (collectively the "Defendants/Third–Party Plaintiffs"). On November 10, 2005, the Defendants/Third–Party Plaintiffs filed a third-party complaint against Horizon International Group Ltd. ("Horizon"), Cambridge Horizon Consultants, Inc. ("Cambridge"), John Morrongiello ("Morrongiello"), and Norman Benet ("Benet") (collectively the "Third–Party Defendants").

Currently pending before the Court is a motion by the Third–Party Defendants, under Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6), to dismiss the third-party complaint.

## I. BACKGROUND

### A. Factual Background

The Plaintiff, a New Jersey corporation, issues insurance policies. Goodmark, a former New York corporation, manufactured women's clothing. Schlesinger, formerly a New York resident, was an owner and officer of Goodmark. The Plaintiff insured Goodmark's real and personal property.

On August 2, 2005, the Plaintiff filed a complaint against Goodmark and Schlesinger, alleging that they defrauded the Plaintiff. On August 3, 1999, a fire destroyed Goodmark's real and personal property. On August 17, 1999, the Plaintiff made a partial payment to the Defendants/Third–Party Plaintiffs of $100,000 for the preliminary insurance claim. Thereafter, on December 10, 1999, pursuant to the insurance policy, Crum & Forster paid an additional $834,319 to the Defendants/Third–Party Plaintiffs. The Plaintiff contends that it unknowingly made payments on fraudulent insurance claims submitted by Goodmark and Schlesinger.

On November 10, 2005, Goodmark and Schlesinger filed a third-party complaint against the Third–Party Defendants alleging that the Third–Party Defendants defrauded the Plaintiff; breached a contract; breached a covenant of good faith; and were negligent. At the time of the events at issue, Horizon was a New York corporation in the business of adjusting insurance claims. Cambridge is a New York corporation that is the successor to Horizon. Morrongiello was an officer and owner of Horizon and is currently an owner and officer of Cambridge. Benet was an employee of Horizon and is currently an employee of Cambridge.

The Defendants/Third–Party Plaintiffs allege that, following the fire on August 3, 1999 at Goodmark's premises, Goodmark retained Horizon as a public insurance adjuster. The Defendants/Third–Party Plaintiffs contend that, pursuant to a contract, the Third–Party Defendants assumed responsibility for inspecting the premises, assessing damage to the premis-

es and providing an estimate of the loss. They assert that the Third–Party Defendants were responsible for preparing, presenting and negotiating the claim with the Plaintiff.

The Defendants/Third–Party Plaintiffs further contend that from August 1999 through December 1999, the Third–Party Defendants inspected, assessed damages and provided information to the Plaintiff regarding the damages caused by the August 3, 1999 fire. In the third-party complaint, the Defendants/Third–Party Plaintiffs deny that they "devised and executed a scheme to defraud Crum & Forster by submitting and causing to be submitted false, fraudulent and inflated insurance claims/documentation." They further claim "[n]otwithstanding defendants' denial . . . should it be adjudged that the insurance claims and/or documentation submitted to Crum & Forster were 'fraudulent and inflated,' any such fraud or inflation was caused by Third-party Defendants' intentional misconduct and/or negligence, in breach of their contractual obligations and implied covenant of good faith and fair dealing."

## B. The Criminal Case

On October 1, 2003, a grand jury issued a 34 count superseding indictment against Schlesinger, Herman Niederman ("Niederman"), and Goodmark (collectively the "Defendants"), arising out of, among other events, a series of fires that occurred at Goodmark's factory in the Williamsburg section of Brooklyn dating back to 1987. The indictment alleged that the Defendants engaged in various fraudulent schemes. One scheme involved defrauding insurance companies by submitting fraudulent claims for losses resulting from a series of fires that occurred at Goodmark from 1987 to 1999.

In particular, the superseding indictment alleged that, on August 3, 1999, a fire occurred at Goodmark. Schlesinger retained the services of Horizon to negotiate Goodmark's claim with Crum & Forster, the insurance company. According to the superseding indictment, Schlesinger submitted fraudulent documentation from co-defendant Niederman regarding the value of damaged fabrics, as well as other fraudulent documents in order to defraud the insurance company. The superseding indictment stated that Schlesinger and Goodmark prepared false and fraudulent documentation for submission by Horizon to Crum & Forster. After receiving the proof of loss, the insurance company paid the claim in the amount of $934,319. The funds were deposited into the Goodmark bank account.

On May 19, 2005, following a four week jury trial, the Defendants, Schlesinger and Goodmark, were convicted of, among other counts, conspiracy to commit mail and wire fraud, 18 U.S.C. § 371, substantive mail and wire fraud, id. § 1341 and 1343, conspiracy to commit money laundering and substantive money laundering. Id. § 1956(h) and 1957. At the trial the Government submitted proof of two fraudulent schemes. One scheme involved defrauding insurance companies by submitting fraudulent claims for losses sustained as a result of a series of fires that occurred at the Premises from 1987 to 1999. Specifically, according to count one of the superseding indictment, of which Schlesinger and Goodmark were found guilty, the Defendants provided Horizon with fictitious invoices relating to services and repairs in connection with the August 1999 fire.

In connection with the fraudulent claim submitted in relation to the August 3, 1999 fire, on August 4, 2006, in its Judgment, this Court ordered Schlesinger and Good-

mark to pay restitution to Crum & Forster in the amount of $934,319.

## C. The Present Motion

On December 26, 2006, the Third–Party Defendants moved to dismiss the third-party complaint. The Third–Party Defendants contend that the Defendants/Third-Party Plaintiffs were convicted of fraud and, as a result of that conviction, they are collaterally estopped from litigating these claims. Further, the Third–Party Defendants claim that the Defendants/Third-Party Plaintiffs failed to comply with the pleading requirements of Rule 8; failed to state a claim for breach of contract and breach of the covenant of good faith and fair dealing; and that the negligence cause of action is time-barred.

In opposition, the Defendants/Third-Party Plaintiffs contend that their claims are not barred by collateral estoppel because the jury did not decide the Third-Party Defendants' liability; all claims are adequately plead; and the negligence claim is not time-barred.

## II. DISCUSSION

### A. The Standard of Review for a Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a district court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir.2005); *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

### B. As To Collateral Estoppel

 "The Government bears a higher burden of proof in the criminal than in the civil context and consequently may rely on the collateral estoppel effect of a criminal conviction in a subsequent civil case." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir.1986). Moreover, "[b]ecause the mutuality of estoppel is no longer an absolute requirement under federal law ... a party other than the Government may assert collateral estoppel based on a criminal conviction." *Id. See also Chi. Ins. Co. v. Fasciana*, No. 04 Civ. 7934, 2006 WL 3714310, at *3, 2006 U.S. Dist. LEXIS 90399, at *10 (S.D.N.Y. Dec. 13, 2006) ("The Court of Appeals has explained that a party other than the Government may assert collateral estoppel based on a criminal conviction"). "The criminal defendant is barred from relitigating any issue determined adversely to him in the criminal proceeding, provided that he had a full and fair opportunity to litigate the issue." *Gelb*, 798 F.2d at 43. *See also Sorrentino v. Barr Labs., Inc.*, 397 F.Supp.2d 418, 421 (W.D.N.Y.2005) ("It is equally clear that a prior criminal conviction can give rise to collateral estoppel in a subsequent civil action involving some of the same factual issues"); *SEC v. Namer*, No. 97 Civ.2085, 2004 WL 2199471, at *4, 2004 U.S. Dist. LEXIS 19611, at *13 (S.D.N.Y. Sept. 30, 2004) ("In a civil case, it is appropriate to estop a party from relitigating issues actu-

ally and necessarily decided as part of a prior criminal judgment and conviction").

In order for collateral estoppel "to apply: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb*, 798 F.2d at 44. *See also New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir. 2000). "To show an identity of issue, the issue must have been material to the first action or proceeding and essential to the decision rendered therein ... and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair rights or interests established by the first." *Sorrentino*, 397 F.Supp.2d at 422.

In the criminal action, the Defendants/Third–Party Plaintiffs were convicted of mail fraud, wire fraud and conspiracy to commit mail and wire fraud in connection with false and fraudulent insurance claims that they submitted to Crum & Forster. Specifically, count one of the superseding indictment, of which Schlesinger and Goodmark were found guilty, noted that Schlesinger and Goodmark had provided Horizon with fictitious invoices relating to services and repairs in connection with the August 1999 fire. In fact, the jury determined that Schlesinger and Goodmark schemed to defraud insurance companies, and specifically, Crum & Forster, in connection with the August 1999 fire.

In their third-party complaint in this civil action, the Defendants/Third–Party Plaintiffs deny that they defrauded Crum & Forster in connection with the August 3,

1999 fire, despite the fact that this issue was already decided in the criminal action by proof beyond a reasonable doubt. Further, the Defendants/Third–Party Plaintiffs contend, under the guise of a breach of contract and negligence action, that "should it be adjudged that the insurance claims and/or documentation submitted to Crum & Forster were 'fraudulent and inflated,' such fraud or inflation was caused by ThirdParty Defendants' intentional misconduct and/or negligence."

The Defendants/Third–Party Plaintiffs seek to relitigate the issues decided in the criminal case by denying their liability and alternatively, claiming that if fraudulent claims were submitted to Crum & Forster, any fraud was committed by the Third–Party Defendants. Clearly, the first prong of the *Gelb* test is met because the issue of liability for the fraudulent insurance claims was material to the criminal action and is the issue to be decided in the present case. *Sorrentino*, 397 F.Supp.2d at 422. In fact, the third-party complaint is based on the Defendants/Third–Party Plaintiffs' denial of their criminal liability and claim that other parties actually bear responsibility for the criminal actions.

Under prong two of *Gelb*, there can be no question that, in the criminal action, Schlesinger and Goodmark actually litigated their case in a four week trial. Further, the jury deliberated and decided the facts necessary to reach a verdict on the superseding indictment as it pertained to the insurance fraud, and specifically the fraudulent claims submitted to Crum & Forster following the August 1999 fire. Further, the Defendants/Third–Party Plaintiffs do not deny that they had a full and fair opportunity to defend themselves in the prior criminal proceeding, as required by prong three of *Gelb*. Finally, the issue previously litigated was necessary to

support a valid and final judgment on the merits. *Gelb*, 798 F.2d at 44.

In opposition to the Third–Party Defendants' motion, the Defendants/ThirdParty Plaintiffs contend that, in the criminal case, the jury did not have the opportunity to decide whether the Third–Party Defendants "bore responsibility for the submission of fraudulent insurance claims or documentation," and therefore, the issues in the present case are not identical to those litigated in the criminal case. However, as previously discussed, the jury determined that Schlesinger and Goodmark were responsible for the submission of fraudulent insurance claims. Although the Defendants/Third–Party Plaintiffs, in their opposition papers, argue that the jury never addressed whether Horizon could have been partially responsible, in the third-party complaint, Schlesinger and Goodmark deny liability and contend that Horizon bears full responsibility for the submission of fraudulent claims. The Defendants/ThirdParty Plaintiffs are attempting to relitigate their own liability and prove that the ThirdParty Defendants defrauded Crum & Forster despite the jury's findings. The Defendants/Third–Party Plaintiffs may not waste judicial resources in this manner.

The Defendants/Third–Party Plaintiffs further contend that collateral estoppel should not apply to the present case because the Defendants' criminal case is on appeal. This claim is without merit. *See United States v. All Right, Title & Interest in Real Property etc.*, 901 F.2d 288, 292 (2d Cir.1990) ("the pendency of an appeal from a conviction does not deprive a judgment of its preclusive effect"); *Namer*, 2004 WL 2199471 at *8, 2004 U.S. Dist. LEXIS at *24 ("The pendency of a criminal appeal generally does not deprive a judgment of its preclusive effect"); *Flair Broad. Corp. v. Powers*, Nos. 89 Civ. 2528, 89 Civ. 5185, 1998 WL 247521, at *4, 1998 U.S. Dist. LEXIS 6949, at *15 (S.D.N.Y. May 15, 1998) ("the pendency of an appeal does not preclude the application of collateral estoppel under either federal or New York law").

As such, the doctrine of collateral estoppel bars the interposition of the thirdparty complaint. Accordingly, the Third–Party Defendants' motion to dismiss the third-party complaint is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Third–Party Defendants' motion to dismiss the thirdparty complaint is **GRANTED** and the third-party complaint is dismissed with prejudice.

**SO ORDERED.**