THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 State of South Carolina,  Respondent,
 v.
 Dominique Donte
 Moore, Appellant.
 

Appeal from York County
John C. Hayes, III, Circuit Court Judge 
Unpublished Opinion No. 2008-UP-135
Submitted March 3, 2008  Filed March 4,
 2008
AFFIRMED

 
 
 
 James W. Boyd, of Rock Hill, for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney General
 John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,
 Assistant Attorney General Christina J. Catoe, all of Columbnia; and Solicitor Kevin
 S. Brackett, of York, for Respondent.
 
 
 

PER
 CURIAM:  Dominique Donte Moore (Moore) was convicted of possession with
 intent to distribute (PWID) crack cocaine.  He received a twenty-five year
 sentence and a fine of $50,000.  Moore argues the court erred in admitting into
 evidence money seized from his person and related testimony.  We affirm. [1]
FACTS
At
 2:30 AM, April 25, 2006, an officer with the Rock Hill Police Department
 stopped Moores vehicle for violation of a noise ordinance.  After exhibiting
 what the officer considered suspicious behavior, Moore was asked to step out of
 the car.  The officer observed Moore holding a plastic bag in his hand, which
 he dropped during a struggle.  The bag contained 1.07 grams of crack cocaine. 
 Another .06 grams were found in Moores back pocket.  No additional drugs or
 paraphernalia were found in a search of Moores car, but $1,362 in cash was
 seized from his person.  The cash consisted of six $100 bills, thirty $20
 bills, ten $10 bills, six $5 bills, and thirty-two $1 bills.  After receiving
 his Miranda rights, Moore told the officers he did not use crack.  When
 asked if he sold it, Moore answered, I do what I have to do to get by.  With Moore in custody, he refused to sign the money over to the police.  He later told them the
 money was not his, though he refused to say to whom it belonged.  Later still,
 he said it was his mothers money.  The State then listed her name on the
 consent order of forfeiture.
In a
 pretrial motion to suppress, Moore contended the money should not be admitted
 because (1) no evidence linked or traced it to any illegal drug activity; (2)
 assuming the money was traceable to illegal drug activity, no evidence traced
 it to the particular drugs in this case; and (3) the State, by naming Moores
 mother the owner in the consent order for forfeiture, was collaterally estopped
 from arguing the money belonged to Moore.  
In
 support of the admission of the money, the State presented evidence that crack
 cocaine is typically sold in $20 rocks, though sales may be in larger amounts
 for more money.  Additionally, the State asserted the evidence was more
 relevant because of Moores unemployment.  The State argued the consent order
 was irrelevant to the case and unrelated to any connection between the money
 and drugs. 
The
 trial judge ruled the evidence of the $20 bills would be admissible if an
 officer testified a single crack cocaine rock typically sells for $20.  Without
 further testimony, however, the other money did not constitute circumstantial
 evidence and would not be admitted.  Concerning the forfeiture order, the trial
 judge said the State would have been wise to name both the mother and Moore,
 but doing so would have gone against the mothers consent.  From the record, it
 appears the mother claimed she loaned the money to Moore.  Because the mother
 didnt completely say it was her money, the trial judge reasoned it was Moores money but subject to repayment.  Neither party made further motions at the
 suppression hearing.  At trial, an officer submitted that crack cocaine rocks
 usually sell for $20 and, over Moores objections, the officer told of the $20
 bills found during the arrest.  After the close of the States evidence, the
 court denied Moores directed verdict motion.
STANDARD
 OF REVIEW
In criminal cases,
 the appellate court sits to review errors of law only.  State v. Wilson,
 345 S.C. 1, 545 S.E.2d 827 (2001); State v. Wood, 362 S.C. 520, 608
 S.E.2d 435 (Ct. App. 2004); State v. Mattison, 352 S.C. 577, 575 S.E.2d
 852 (Ct. App. 2003).  This court is bound by the trial courts factual findings
 in determining the admissibility of certain evidence in criminal cases.  Wilson, 345 S.C. at 6, 545 S.E.2d at 829.  The admission of evidence is within the
 discretion of the trial court and will not be reversed absent an abuse of
 discretion.  State v. Pagan, 369 S.C. 201, 207, 631 S.E.2d 262, 265
 (2006); State v. Gaster, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002); State
 v. Cherry, 353 S.C. 263, 272-73, 577 S.E.2d 719, 723 (Ct. App. 2001).  An
 abuse of discretion occurs when the conclusions of the trial court either lack
 evidentiary support or are controlled by an error of law.  Pagan, 369
 S.C. at 208, 631 S.E.2d at 265; State v. McDonald, 343 S.C. 319, 540
 S.E.2d 464 (2000); State v. Walker, 366 S.C. 643, 623 S.E.2d 122 (Ct.
 App. 2005).  In order for an error of law to warrant reversal, the error must
 result in prejudice to the appellant.  State v. Beck, 342 S.C. 129, 536
 S.E.2d 679 (2000); State v. Wyatt, 317 S.C. 370, 453 S.E.2d 890 (1995); State
 v. Patterson, 367 S.C. 219, 625 S.E.2d 239 (Ct. App. 2006).
DISCUSSION
Moore argues the trial court erred in admitting into
 evidence money seized from his person upon arrest and related testimony because
 the money was irrelevant and prejudicial under Rule 403, SCRE.  
Section
 44-53-375(B) of the South Carolina Code creates a permissive inference that
 possession of more than one gram of crack cocaine constitutes possession with
 intent to distribute.  State v. Robinson, 344 S.C. 220, 223, 543 S.E.2d
 249, 250 (Ct. App. 2001); S.C. Code Ann. § 44-53-375(B) (2002).  Possession of
 any amount of controlled substance coupled with sufficient indicia of intent to
 distribute will support a conviction for possession with intent to
 distribute.  State v. James, 362 S.C. 557, 561-62, 608 S.E.2d 455, 457
 (Ct. App. 2004), cert. dismissed, Op. No. 26393 (S.C. Sup. Ct. filed Nov. 19, 2007) (Shearouse Ad. Sh. No. 40 at 16), (quoting Matthews v. State,
 300 S.C. 238, 239, 387 S.E.2d 258, 259 (1990)).
The
 trial court based its decision to admit the evidence on State v. Cherry,
 353 S.C. 263, 577 S.E.2d 719 (Ct. App. 2001), a case where money found on the
 defendant upon arrest was relevant evidence supporting a PWID crack cocaine
 conviction.  Although Moore states the facts of Cherry are distinguishable
 from those in this case, there is a strong parallel.  
In Cherry,
 the defendant was a passenger in a car stopped for two traffic violations.  A
 pat-down search revealed eight crack cocaine rocks and $322.  Cherry was
 charged with PWID crack cocaine.  During an in limine motion,
 Cherry attempted to suppress the money arguing it was irrelevant.  The State
 countered the money was relevant to show intent to sell the crack cocaine on
 his person because it commonly sold for $20 per rock.  The trial judge
 refrained from ruling on admissibility until hearing testimony.  Over Cherrys
 objection to the money testimony, the arresting officer told the court no drug
 paraphernalia was found in the car, the stop was made in a high crime area, the
 money found on Cherry was mostly $20 bills, and crack cocaine is generally sold
 in $20 rocks.   The court denied Cherrys motion for a directed verdict finding
 the evidence was sufficient to submit the case to the jury.  On appeal, Cherry
 complained of error in overruling his objection.  This Court agreed with the
 State that the money was admissible instructing:

 Evidence
 is relevant, and therefore admissible, when it tends to make the existence of a
 fact in controversy more or less probable than it would be without the
 evidence.  Rule 401, SCRE.  The money was relevant to the contested question of
 whether Cherry intended to distribute the crack rocks in his possession.  In
 light of the officers testimony regarding the price of crack rocks, the $322
 in mostly twenties was some indication that Cherry had sold crack earlier in
 the evening and thus, its admission into evidence tended to make the allegation
 he intended to distribute the crack in his watch pocket more probable.  The
 money was properly admitted.  

Id. at 274, 577 S.E.2d at 724.
In a divided review, this Court again affirmed Cherry's conviction
 relying, in part, on the money as supporting evidence.  State v. Cherry,
 348 S.C. 281, 559 S.E.2d 297 (Ct. App. 2001) (en banc), affd in
 result, 361 S.C. 588, 606 S.E.2d 475 (2004).  [T]he majority opinion found the following evidence
 justified the trial court's decision to deny Cherry's motion for a directed
 verdict: (1) Cherry was arrested in high crime area known for violence and drug
 activity; (2) Cherry had in his possession a small bag containing eight rocks
 of crack cocaine; (3) he had no drug paraphernalia with him indicating the
 crack cocaine was for his personal consumption; (4) he had $322 in cash, in mostly twenty dollar bills; and (5) a single rock
 of crack cocaine typically sold for twenty dollars.  State v. James,
 362 S.C. 557, 564, 608 S.E.2d 455, 458 (Ct. App. 2004) (emphasis added) (citing Cherry, 348 S.C. at 285, 559 S.E.2d at 299); see also State
 v. Elmore, 368 S.C. 230, 628 S.E.2d 271 (Ct. App. 2006) cert. denied Apr. 5, 2007 (trial court properly denied directed verdict motion on charge of PWID
 marijuana where search found numerous baggies of marijuana in defendants car,
 no marijuana residue or paraphernalia, and $653 cash on person); cf. James,
 362 S.C. 557, 608 S.E.2d 455 (Ct. App. 2004) (insufficient evidence to submit
 to jury charge of PWID crack cocaine where, inter alia, defendant
 did not have a large amount of cash on his person, and amount of crack
 speculative because bag seen only briefly by officer and never recovered for
 testing).
Moore, who carried $1,362 in
 cash consisting of six $100 bills, thirty $20 bills, ten $10 bills, six $5
 bills, and thirty-two $1 bills, claims the mixed denominations removes his case
 from the ambit of Cherry.  We disagree.  Here, Moore carried $600 in $20
 bills.  The relevance of this sizable amount is not diluted by the significant
 amount held in other denominations.  Because the money was relevant evidence,
 analysis of whether Moore was prejudiced is unwarranted.  
In
 his brief, Moore averred the purpose of admitting the money was to indicate Moore sold crack earlier in the evening, and prior sales would constitute other bad acts
 requiring a clear and convincing standard of proof.  This argument was not presented
 to the trial judge and is not preserved for our review.  Arguments not raised or
 ruled upon by the trial court are not preserved for appellate review.  State
 v. Carlson, 363 S.C. 586, 597, 611 S.E.2d 283, 288 (Ct. App. 2005); State
 v. Wise, 359 S.C. 14, 596 S.E.2d 475 (2004); State v. Perez, 334
 S.C. 563, 514 S.E.2d 754 (1999).
Moore contends the State should be collaterally estopped
 from introducing the money into evidence because
 the consent order of forfeiture named Moores mother as the owner.  This
 argument fails.  [C]ollateral estoppel prevents a party
 from relitigating in a subsequent suit an issue actually and necessarily
 litigated and determined in a prior action.   Koon v. State, 358 S.C.
 359, 364-65, 595 S.E.2d 456, 459 (2004) (overruled on other grounds by State
 v. Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005)) (citing Jinks v. Richland
 County, 355 S.C. 341, 585 S.E.2d 281 (2003)).  In order to successfully
 assert collateral estoppel, the party seeking issue preclusion must show that
 the issue was actually litigated and directly determined in the prior action,
 and that the matter or fact directly in issue was necessary to support the
 first judgment.  Town of Sullivans Island v. Felger, 318 S.C. 340,
 344, 457 S.E.2d 626, 628 (Ct. App. 1995).  
Moore has
 offered no precedent showing a civil forfeiture proceeding may be defensively
 asserted to have a binding effect on a subsequent criminal trial.  The law of South Carolina is clear: [O]nce a person has been criminally convicted he is bound by that
 adjudication in a subsequent civil proceeding based on the same facts
 underlying the criminal conviction.  Doe v. Doe, 346 S.C. 145, 148, 551
 S.E.2d 257, 258 (2001).  Whereas a criminal convictions greater degree of
 proof justifies utilization of collateral estoppel in later civil actions, the
 logic does not apply when applied in reverse.  [W]hen a conviction is offered
 in a civil proceeding against the party convicted, the party cannot complain of
 a difference in the degree of proof when the burden of proof in the criminal
 proceeding was much higher than the burden of proof in the present civil
 proceeding.  Id. at 149, 551 S.E.2d at 259; see also Crum
 & Forster Ins. Co. v. Goodmark Indus., Inc., 488 F.Supp.2d 241, 244
 (E.D.N.Y. 2007) (citing Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 43
 (2d Cir. 1986)) (The government bears a higher burden of proof in the criminal
 than the civil context and consequently may rely on the collateral estoppel
 effect of a criminal conviction in a subsequent civil case.)  
CONCLUSION
The
 trial judge did not abuse his discretion in admitting the evidence of the $20
 bills found on Moore at the time of his arrest.  Accordingly, Moores
 conviction is
AFFIRMED.
ANDERSON,
 SHORT, AND THOMAS, JJ., concur.

[1]  We decide this case without oral argument
 pursuant to Rule 215, SCACR.